Max E. Cohen and Shirley Cohen v. Commissioner.
Cohen v. Commissioner
Docket No. 2757-62.
United States Tax Court
T.C. Memo 1965-136; 1965 Tax Ct. Memo LEXIS 195; 24 T.C.M. (CCH) 728; T.C.M. (RIA) 65136; May 21, 1965
*195 Held, that $64,450, which Nationwide Insurance Company advanced from time to time to petitioner in 1958 as its attorney who represented it in some 500 cases brought against Nationwide on contested claims, was burdened with an obligation and agreement as to how it should be used by the petitioner, and the Commissioner's determination that $47,000 of such amount represented income to petitioner in 1958, which he did not report, and that $4,350 of such amount represented taxable income to him in 1959, which he did not report, was erroneous. Petitioner correctly reported his income in this respect in both taxable years. Benjamin B. Levin, 121 S. Broad St., Philadelphia, Pa., for the petitioners. Samuel T. Reiner, for the respondent. BLACK Memorandum Findings of Fact and Opinion The *196 Commissioner has determined deficiencies in petitioners' income tax and an addition to tax under section 6654(a) of the 1954 Code for the calendar years 1958 and 1959, as follows: Addition to Tax
Year
Deficiency
Sec. 6654(a)
1958
$35,142.71
$878.49
1959
7,527.03
0 The deficiencies are explained in the deficiency notice as follows: The following amounts received by Mr. Max E. Cohen from a client (or clients) in 1958 and 1959, which amounts were excluded from income reported in the returns for the respective years, have been restored to income: Year
Omitted Income
1958
$47,000.00
1959
4,350.00
The addition to the tax for failure to pay estimated income tax is asserted herein, under the provisions of section 6654(a) of the Internal Revenue Code of 1954. The above adjustments to the income reported on the joint returns of petitioners for 1958 and 1959 are contested by appropriate assignments of error. Some other adjustments made by the Commissioner in both of the taxable years are not contested. Effect will be given under Rule 50 to these uncontested adjustments. Findings of Fact A stipulation of facts, *197 together with exhibits attached thereto, and two supplemental stipulations of facts with exhibits attached were filed at the hearing and these are incorporated herein by this reference. There was some oral testimony received at the hearing. Max E. Cohen and Shirley Cohen are husband and wife and reside at Elkins Park, Pa. Max E. Cohen will hereinafter be referred to as petitioner. Petitioners filed their joint Federal income tax returns for the taxable years 1958 and 1959 with the district director of internal revenue at Philadelphia, Pa. Petitioner is an attorney licensed to practice in Pennsylvania and has been for approximately thirty-seven years. Petitioner's principal client during the years involved was Nationwide Insurance Company, sometimes hereinafter referred to as Nationwide. Approximately 95 percent of petitioner's business during the years 1958 and 1959 was with Nationwide. Petitioner was retained by Nationwide to defend in court, if necessary, those claims which were not settled by Nationwide's adjustors. Upon completion of a case Nationwide was billed upon a case-by-case basis for fees and costs. Petitioner would pay all costs in connection with a case out *198 of his own funds and would not bill Nationwide therefor until completion of the particular case. The costs incurred by petitioner on behalf of Nationwide were general legal costs such as filing fees, Marshal's costs, telephone expenses, subpoenas, stipulations, prothonotary fees, sheriff costs, affidavits, jury fees, and other matters of that kind. Petitioner expensed currently general legal costs claiming a deduction for them in 1958 in the amount of $10,970.48 and in 1959 in the amount of $11,970.07. These respective amounts were characterized on petitioners' income tax returns as "General Legal Costs" and were deducted from gross income and the Commissioner has not disturbed these deductions. As of January 1, 1958, petitioner had pending in his office more than 500 cases in which he represented Nationwide, and as of that date some of the costs had already been incurred in said cases. Beginning on January 1, 1958, Nationwide forwarded to petitioner $100 for each common pleas court case and $500 for each county court case which petitioner was handling for Nationwide and the repayment of the amount to Nationwide was to be made by crediting Nationwide with $100 for the amount *199 due petitioner on each common pleas court case and $50 on each county court case. Petitioner received, in this manner, in the year 1958 in the form of advances the amount of $64,450 from Nationwide. The payor of these amounts, Nationwide, characterized these payments as advance costs. The funds, when received by petitioner, were deposited to his business bank account and commingled with his other funds. Petitioner was required to account for these advances by showing a credit to Nationwide in his final billing on a case when the case had been completed. Petitioner's final billing to Nationwide, on cases in which he received an advance, shows the advance as received on account of his fee. Opinion BLACK, Judge: There is no dispute about the fact that petitioner received from Nationwide $64,450 in 1958 - that fact has been stipulated. It is the contention of petitioner that this sum of money was borrowed by petitioner from Nationwide and the unpaid balances at December 31, 1958, and December 31, 1959, did not constitute taxable income to petitioners in those years. Respondent contends that petitioner received these advances in the years 1958 and 1959 from his principal client, *200 Nationwide, and that the unpaid balances in 1958 and 1959 were taxable income to petitioner. The facts show that petitioner in 1958 was the legal representative of Nationwide in more than 500 cases which had been brought against Nationwide on contested claims. It had been the custom of petitioner in former years to defray the costs of various kinds which were incurred in such suits out of his own funds and when the case was completed and disposed of he would include such costs in his invoice to Nationwide for his fees for his services of various kinds which he had rendered in the case. In 1958 petitioner found himself short of funds and took the matter up with George A. Harrison, Chief Claims Counsel for Nationwide, at Harrisburg, Pa. When petitioner explained his financial situation to Harrison, Harrison agreed that Nationwide would make advancements to him to be used in cases then pending, and other cases subsequently brought, against Nationwide in the Common Pleas Courts and the County Courts of Pennsylvania. These advances were to be repaid as and when cases were completed and petitioner billed Nationwide for his fees for services rendered and for costs which had been incurred *201 and paid by him in the respective cases. It has been stipulated that during the year 1958 Nationwide advanced to petitioner the sum of $64,450. In his oral testimony petitioner characterized the sums of money which went to make up the total of $64,450 as money which he borrowed from Nationwide but Harrison, who testified as one of respondent's witnesses, said that Nationwide treated the amounts as advance costs. When asked how an accounting would be made by petitioner to Nationwide for such advance costs, Harrison's reply was: "Mr. Cohen would show a credit for the advance costs on his final billing when the case was concluded." Certain exhibits which were attached to the supplemental stipulation of facts and exhibits which were introduced in evidence by petitioner show how the matter was treated by petitioner. We think it would be helpful to include at this point petitioner's Exhibit 17, which reads as follows: Nationwide Mutual Insurance Co.
2303 Brunswick Avenue
Trenton, N.J.
Attention: Melville P. Windle, Esq. April 3, 1959
Claim No. 71 017 100
Insured: Joseph Konkel
Our File No. FB 4149
4/24/8
Receipt of file, review of same, entry of appearance for defendant
5/19/8
Preparation and filing of Answer to Complaint
6/ 5/8
Preparation and filing of Writ, Complaint and Cross-Claim against
Additional Defendant
6/12/8
Preparation of Review of file as to facts and
law and forwarding same
to Home Office
6/20/8
Preparation of interrogatories to be answered by plaintiff
2/13/9
Preparation of case for hearing before Arbitration Board
3/ 6/9
Attendance at hearing before Arbitration Board
3/18/9
Forwarding written report on Arbitration Hearing to Home Office
4/ 3/9
Forwarding closing documents $150.00
to Home Office
COSTS
6/ 5/8
Prothy - Third Party $ 3.25
Complaint
6/ 5/8
Sheriff - service
14.50
6/ 5/8
Affidavits
1.00
4/ 3/9
Prothy - satis. case & Cert.
6.50
25.25
TOTAL
$175.25
*202 Thus, it will be seen from an examination of this exhibit that in this particular case shown in the exhibit, petitioner collected a fee of $150 for the various services which he had rendered in the case and was reimbursed for $25.25 costs which had been incurred in the case. This particular Exhibit 17 is representative, we think, of the several exhibits which are attached to the supplemental stipulation of facts and which have been included in our Findings of Fact by reference. These collections and many others similar thereto were made out of the $64,450 advanced by Nationwide to petitioner in 1958. Petitioners' joint income tax returns for 1958 and 1959 are attached as exhibits to the stipulation of facts and have been incorporated in our Findings of Fact by reference. The return for 1958 shows adjusted gross income of $72,286.95 and tax paid thereon of $31,516.04. The return for 1959 shows adjusted gross income of $65,809.74 and tax paid thereon of $28,314.41. The return for 1958 shows total receipts of $165,834.07 and the return for 1959 shows total receipts of $187,848.38. Therefore, considering all the evidence in the record, including the oral testimony, we think that petitioner *203 has shown that he is accounting for the sum of money which was advanced to him in 1958, case by case. We do not think the fact that he deposited the moneys received in 1958 from time to time in his regular bank account and commingled these moneys with his regular fund made the advancements to him taxable income. See Seven-Up Co., 14 T.C. 965 (1950). In the Seven-Up Co. case we held that amounts received by that company from bottlers who contributed to a national advertising fund were burdened with an obligation to expend such funds for national advertising and constituted a trust fund which the company administered as agent and that no gain or profit was realized by the company as the result of the receipt of these amounts and that respondent erred in determining that the excess of the amounts received by the company over expenditures for advertising constituted taxable income to the company. We think that the $64,450 advanced by Nationwide from time to time to petitioner in 1958 definitely had strings attached to it, so to speak, and would not become income to petitioner until each particular case was completed and petitioner would invoice to Nationwide a bill for *204 his services and also the costs which he had incurred and paid in each case. The amount thus collected for his services would, of course, be taxable income and the amount collected for costs which petitioner had incurred and paid in the suit would not be income. On this issue we hold for the petitioner. It has been stipulated that - 17. In the event that the contested issue in the instant case is decided in favor of respondent, the net operating loss deduction for the year 1959 resulting from the loss carryback for 1962 is $14,903.88. In the event that said issue is decided in favor of petitioner, said net operating loss deduction resulting from the loss carryback for 1962 is $3,625.68 as reflected in Exhibit 15-0. Having decided the contested issue in favor of petitioner, the net operating loss deduction resulting from the loss carry-back for 1962 is $3,625.68. Decision will be entered under Rule 50.